CHRISTOPHER CHIOU
Acting United States Attorney
Nevada Bar No. 14853
DANIEL R. SCHIESS
Nevada Bar No. 5483
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
PHONE: (702) 388-6336
FAX:  (702) 388-5087
dan.schiess@usdoj.gov

*Attorneys representing the United States*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Alan Cassell,<br><br>Defendant. | 2:17-cr-00316-RFB-DJA<br><br>Government's Sentencing Memorandum |

**CERTIFICATION: This Sentencing Memorandum is timely filed.**

Defendant Alan Cassell has committed a serious crime involving bribery affecting a federal grant program under 18 U.S.C. § 666. This memorandum provides information and perspective to help the Court determine a just sentence.

### Factual Background

The following summary is based on the Presentence Investigation Report (PSR) and the factual statement in Cassell's plea agreement.

Cassell worked for Heartland Coalition ("Heartland"), a non-profit organization that provided community services to low- to moderate-income individuals and families. As part of its intended services, Heartland bought and renovated foreclosed homes for resell to low- and

1

moderate-income individuals and families. Heartland bought foreclosed homes through a program established by the National Community Stabilization Trust (NCST), a private company that helped financial institutions following the 2008 market crash to sell foreclosed homes to non-profit organizations. As part of its services, the NCST approved the non-profit organizations that could buy foreclosed homes from financial institutions, and it selected the geographical areas in which non-profits could buy the homes.

The NCST also helped the Department of Housing and Urban Development (HUD) administer a program similar to its own. The NCST acted as a clearinghouse of sorts between HUD-approved non-profits, HUD, and financial institutions, and helped HUD-approved non-profits navigate the buying and selling process. HUD and the NCST effectively merged their programs, allowing the NCST to help both HUD's non-profits and NCST's non-profits buy foreclosed homes. The NCST received federal grant money to help HUD administer its program.

Sergio Barajas was a regional representative for the NCST responsible for administering aspects of the joint HUD-NCST program in the western United States. In that position, Barajas could influence whether NCST non-profits obtained approval to buy houses through the NCST program, the markets in which NCST non-profits could buy the houses, and an NCST non-profits' ability to remain in the NCST program. Because NCST non-profits received priority status over all but HUD non-profits to buy houses in designated areas, they stood to made millions through the NCST program. Cassell ran Heartland's day-to-day operations buying and selling NCST houses for Heartland.

Not long after Heartland began buying houses through the NCST, Barajas solicited Cassell for Heartland to pay him for each house that Heartland purchased through the NCST program. Cassell and his associate agreed to pay Barajas, and over time they paid him

$186,025. In return, Barajas used his influence to help Heartland obtain NCST's approval to buy houses in different markets and to avoid being terminated from the NCST program.

## Sentencing Guidelines

The parties have stipulated that USSG § 2C1.1 applies. We also agreed to recommend that Cassell receive a three-level downward adjustment as a group plea benefit, that the government would argue for a sentence at the low-end of the advisory guideline range as determined by the Court, and that Cassell could argue for a downward variance under 18 U.S.C. § 3553(a).

The total offense level after a three-level adjustment for acceptance of responsibility is 19. Cassell has no criminal history points. The parties' guideline calculations conform with the calculations in the Presentence Report.

## Section 3553(a) Factors

"The overarching statutory charge for a district court is to 'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, . . . provide just punishment[,] [and] afford adequate deterrence," among other factors outlined under Section 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting 18 U.S.C. § 3553(a)). The Court "need not tick off each of the § 3553(a) factors to show that it has considered them." *Id.* at 992.

To assist the Court in fashioning an appropriate sentence, the United States highlights the following 3553(a) factors relevant for the Court's consideration.

1. **The Nature and Circumstances of the Offense**

Bribery is a serious offense. It undermines the public's confidence in government and contributes to an overall sense of community distrust. Here Cassell conspired to bribe Barajas, a person covered by the Federal Program statute (18 U.S.C. § 666). Together they

harmed public confidence in government, particularly confidence affecting a federal program that sought to help non-profits repair blighted neighborhoods and low- to moderate-income individuals and families recover from the financial crash. Cassell benefited handsomely from his corruption, making substantial income from buying and selling houses through the NCST program.

### 2. Cassell's History and Characteristics

Cassell has no criminal history beyond a parking ticket and a nearly seventeen-year old criminal charge that was ultimately dismissed. Cassell had been given opportunities to develop himself as a child, has worked steadily throughout his life, and has recently been giving back to his community by helping less fortunate children, senior citizens, and the homeless. The PSR does not report when Cassell began giving back, but to his credit, he does.

### 3. The Seriousness of the Offense and the Need for Just Punishment

Given the seriousness of the offense, the harm it caused the community, and the need for a just punishment, a sentence of imprisonment should be imposed.

### 4. The Need to Promote Respect for the Law and to Promote Deterrence

Federal grant programs need to be untainted – and appear to be untainted – for communities to maintain confidence in government operations. The need for community confidence in government is particularly acute when communities face tragedies and look to government for assistance. Following the 2008 financial housing crash, Cassell corruptly sought to benefit Heartland and himself to the exclusion of others in a program that was intertwined with a government-assistance program. He thereby damaged public confidence in an important government program. A just sentence is needed to punish him and to address the harm he caused.

**Sentencing Recommendation**

The government recommends a sentence at the low-end of the guideline range, a 21-month sentence of incarceration. The government may revise is recommendation at sentencing. The government also recommends a three-year period of supervised release, and it concurs with the Probation Office's recommendation of a $6,000 fine. A special assessment of $100 is mandatory and due at sentencing.

**Conclusion**

Loss of public confidence in government harms everyone. Cassell damaged public confidence in government by bribing Barajas to put Heartland and himself ahead of others and to profit substantially. The court should impose a just sentence to restore community confidence and to punish Cassell.

Respectfully submitted this 11th day of May, 2021.

CHRISTOPHER CHIOU
Acting United States Attorney

*/s/ Daniel R. Schiess*
_____
DANIEL R. SCHIESS
Assistant United States Attorney